**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: March 11, 2015
Date Decided: March 12, 2015

David H. Williams, Esquire
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19899

Jeffrey Weiner, Esquire
Law Office of Jeffrey M. Weiner PA
1332 King Street
Wilmington, DE 19801

Re: *City of Wilmington v. Fraternal Order of Police Lodge 1*
Civil Action No. 10329-VCG

Dear Counsel:

Before me is the appeal of the City of Wilmington (the "City") from a decision of the Public Employment Relations Board (the "PERB"), itself affirming on appeal an arbitrator's decision resolving a collective bargaining dispute between the Fraternal Order of Police Lodge 1 (the "FOP") and the City in favor of the FOP. Pursuant to the Police Officers' and Firefighters' Employment Relations Act (the "Act"),[1] arbitration on collective bargaining disputes between a public employer and its employee police officers and firefighters are done "baseball style," in which after an unsuccessful negotiation mediation process, each side presents to the arbitrator its last, best, final offer.[2] The arbitrator is then required,

---

[1] *See* 19 *Del. C.* §§ 1601–1618.
[2] *See id.* §§ 1614–1615.

based on an evaluation of the factors set out in 19 *Del. C.* § 1615(d), to choose either the final offer of the government or the union; the arbitrator may not pick and choose between provisions of those two offers.[3] Among the factors which the arbitrator must consider is

> the financial ability of the public employer, based on existing revenues, to meet the costs of any proposed settlement; provided that any enhancement to such financial ability derived from savings experienced by such public employer as a result of a strike shall not be considered by the binding interest arbitrator.[4]

According to the City, subsection (d)(6) serves as a disqualifier for the union's offer: If the public employer cannot pay the costs of the union's proposal from "existing revenues," by default the arbitrator must select the public employer's offer instead.

Here, the arbitrator (and, on appeal, the PERB) determined that the City had the ability to meet the cost of the FOP's proposal in light of existing revenues. The arbitrator examined the other factors called for in Section 1615(d) and determined that the FOP's offer was superior in light of those factors.[5] On appeal, the City argues that the arbitrator and the PERB defined "existing revenues" improperly.

---

[3] *See id.* § 1615(d) ("The binding interest arbitrator shall make written findings of facts and a decision for the resolution of the dispute; provided however, that the decision shall be limited to a determination of which of the parties' last, best, final offers shall be accepted in its entirety.").
[4] *Id.* § 1615(d)(6).
[5] The other factors for the arbitrator to consider include the interest and welfare of the public, comparison of pay to similarly situated employees, the overall compensation presently received by the employees, stipulations of the parties, the lawful authority of the public employer and

2

It is clear to me from a reading of the Act that it was meant to be applied to negotiations of public employees' prospective wages. That is, the Act anticipated, reasonably, that employers and employees would be negotiating for wages to be paid for hours worked in the future. Placed in that context, the phrase "existing revenue" must mean revenue projected to exist during the contractual period to which the contract was intended to apply. Here, however, the dispute involves the FOP's four-year contract proposal that is entirely retrospective: the proposal applies to hours already worked by employees in fiscal years 201l, 2012, 2013 and 2014. The question becomes, what does "existing revenues" mean in such a context? The FOP notes that, net of this four-year period, there were ample surplus revenues to pay the modest increase in wages sought here. The City points out that in one of those years, fiscal 2014, the City ran an actual deficit, and therefore there were not "existing revenues" in that year to pay wages under the contract consistent with the FOP's proposal. According to the City, the PERB should have determined that the FOP's proposal was thus disqualified under Section 1615(d)(6). In addition, the City argues that "existing revenues" should be examined as the Legislature intended—prospectively—so that the arbitrator must take into account the City's ability to continue to pay wages at the contract rate, which will necessarily hold over after the conclusion of fiscal year 2014 and

"such other factors not confined to the foregoing which are normally or traditionally taken into consideration" in setting public employee wages. *See id.* §1615(d).

3

continue until the resolution of another dilatory negotiation (and perhaps arbitration) of a new labor contract. In order to prevail in this appeal, the City must demonstrate that the arbitrator's finding (adopted by the PERB) that the City is financially able to meet the costs of the FOP's last, best, final offer is wrong as a matter of law.

The Act does not define "existing revenues."[6] Because the statutory language, in the context of the negotiation of an entirely retroactive contractual period, is unclear, the parties are entitled to submit extrinsic evidence on this point. The parties came before me in oral argument after briefing on the City's appeal from the decision of the PERB. Within five business days of the issuance of this Letter Opinion, the parties should inform me whether they wish to supplement the record with extrinsic evidence on the meaning of "existing revenue" as the term appears in the Act, or whether they consider the matter submitted on cross-motions for a judgment on the record.[7]

---

[6] *See id.* § 1602 ("Definitions").
[7] Nothing in this Letter Opinion relieves the parties of their obligation to supplement the record with information regarding annual surplus revenues for the contractual period, as discussed at oral argument.

To the extent the foregoing requires an Order to take effect, IT IS SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III